IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| TROY D. WHITMORE | § | |
| VS. | § | CIVIL ACTION NO. 1:20-CV-485 |
| L. SHULTS, ET AL. | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Troy D. Whitmore, a prisoner previously confined at the United States Penitentiary in Beaumont, Texas (USP Beaumont), proceeding *pro se* and *in forma pauperis*, filed this civil rights action pursuant to *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), against L. Shults, FNU Gilliam, FNU Bengel, FNU Tenner, FNU Hadnot, FNU Jeansonne, FNU Robinson, FNU Graves, FNU Mahone, FNU Primo, FNU Turner, FNU Williams, and FNU Slaughter.

The action was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636 for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Factual Background

Plaintiff alleges he was a resident of the Residential Drug Abuse Program (RDAP) at USP Beaumont starting in March of 2020. Plaintiff states that he did not have any problems or disciplinary issues prior to the events at issue in this action.

On June 23, 2020, Defendant Bengel, the RDAP Coordinator at USP Beaumont, informed Plaintiff and the other RDAP residents that a correctional officer had informed him that some inmates failed to lock up promptly after a recreation period. Defendant Bengel told the inmates that

he would not tolerate misconduct and that the inmates are incarcerated to be punished and to learn discipline. Defendant Bengel placed the entire tier on television, telephone, and computer restriction for 72-hours, and he required the inmates to write a one-page essay on why it is important to follow the rules. The inmates were told that they could sign out of the program if they did not want to comply. Plaintiff believes that Defendant Bengel was not permitted to impose disciplinary sanctions because inmates who chose to withdraw from the program instead of complying with the sanctions would lose the possibility of an early release from prison. Defendant Bengel then ordered the inmates to practice locking up in their cells. Defendants Bengel, Hadnot, Jeansonne, and Robinson took turns running the lock-up drills, which the inmates were forced to do at least five times. Plaintiff alleges this type of punishment is prohibited by the Bureau of Prisons (BOP).

Plaintiff alleges he complained about Defendant Bengel's actions to Defendant Hadnot, and he filed an administrative remedy. Plaintiff alleges BOP policies required Defendant Hadnot to respond to the administrative remedy within twenty days, but Plaintiff did not receive a timely response. Shortly after Plaintiff filed the administrative remedy, he alleges he received a formal warning for misconduct on the RDAP unit.

Plaintiff states that he was previously housed by himself, and he had permits for a bottom bunk and bottom tier because he has spinal problems and a weak knee. Plaintiff alleges another inmate was assigned to Plaintiff's cell on the top tier, even though the inmate had a medical housing permit that prohibited him from being placed on a top tier. Defendant Hadnot allegedly told Plaintiff that he had to give his bottom bunk to the other inmate. Plaintiff showed Defendant Hadnot his permit for a bottom bunk, but Defendant Hadnot told Plaintiff that his permit was expired and would need to be renewed by Healthcare Services. Plaintiff claims that Healthcare Services was

responsible for keeping his permit active. Plaintiff also alleges the other inmate was reassigned to Plaintiff's cell to retaliate against Plaintiff for complaining about the punishments previously imposed by Defendant Bengel. Plaintiff contends Defendant Hadnot refused to call Healthcare Services to update Plaintiff's permit, and then told Plaintiff to speak to the Lieutenant about his refusal to move to the top bunk.

Defendant Hadnot escorted Plaintiff to the Lieutenant's Office, where Plaintiff spoke with Lieutenant Johnson. Lieutenant Johnson instructed Plaintiff to contact Healthcare Services regarding the renewal of his permit, but told Plaintiff that he must surrender his bottom bunk to the other inmate until the issue was resolved. Plaintiff filed another administrative remedy about this incident.

Plaintiff alleges he was subsequently called into a meeting with Defendant Jeansonne. Defendant Jeansonne said that she had received information from a correctional officer that Plaintiff was attempting to get inmates in RDAP to "rise up" because they had been placed on television restriction.

Plaintiff alleges there were issues with the lights in his cell that were not fixed during the three months he was assigned to the cell, which meant that it was dark in his cell every night. Plaintiff claims the plumbing began to back up into the cell, and both inmates were moved to a different cell.

Plaintiff alleges Defendants Hadnot and Tenner searched Plaintiff's cell and confiscated several items of personal property from the cell. Plaintiff contends Defendant Hadnot moved Plaintiff and the other inmate to a cell on the lower tier to retaliate against Plaintiff for complaining about the punishments imposed by Defendant Bengel. Plaintiff alleges the inmates were both moved to a new cell to prevent Plaintiff from having a lower bunk. Plaintiff claims the new cell was known

as the "punishment cell" because it is located in the back of the tier and the television is not visible from the cell. Plaintiff claims the new cell is one of many cells on the RDAP unit that lack functioning duress buttons to call for help in an emergency.

Plaintiff alleges he verbally complained to Defendants Robinson and Hadnot that the cell lacked a functioning duress button. Shortly after that, Plaintiff and his cellmate were moved to another cell on the first tier. Plaintiff alleges the sink in that cell leaked, which caused water to pool on the floor.

Plaintiff claims that garbage accumulated in the cells while the unit was on lockdown because the staff did not collect trash from the cells daily.

Plaintiff states that he suffers from chronic migraine headaches and was prescribed an injectable pain medication to take when he had a migraine. On July 8, 2020, Plaintiff told Defendants Shavers and Tenner that he needed the medication because he was suffering from a headache. Plaintiff alleges Defendants Shavers and Tenner returned to Plaintiff's cell and explained that Healthcare Services Personnel were too busy with the transfer intake process to administer the injection at that time.

Plaintiff also alleges Healthcare Services did not provide him with medical care for back, dental, and vision issues. Plaintiff claims Dr. Ruiz denied him a bottom bunk and bottom tier bunk assignment, but told Plaintiff that he would prescribe pain medication and issue Plaintiff knee and back braces. Plaintiff was later told by an unidentified nurse that the braces were out of stock. Plaintiff sent complaints to Defendant Gilliam about his medical treatment, but did not receive responses to most of his complaints. Defendant Gilliam allegedly responded to Plaintiff's complaint regarding his medication, but Defendant Gilliam denied Plaintiff's complaint.

Plaintiff alleges Defendants Hadnot, Tenner, Jeansonne, Graves, Slaughter, Turner, Mahone, and Primo served Plaintiff nutritionally inadequate meals that were prepared in unsanitary conditions. Plaintiff alleges the food was cold and greasy and was served on broken trays. On one occasion, Plaintiff was served a rotten banana. Plaintiff claims Defendants Mahone, Primo, Slaughter, Williams, Graves, Hadnot, Tenner, Robinson, and Turner were all aware of the deficiencies regarding the food, but they did not address the situation.

Once during a community meeting, Plaintiff expressed concern about standing water in his cell, poor sanitation, and retaliation by staff members. Defendant Graves asked why Plaintiff was complaining. A mentor in the RDAP program allegedly spoke to Defendant Graves because the mentor felt the issues raised by Plaintiff needed to be addressed. Defendant Graves allegedly told the mentor that Plaintiff is a controversial person and that Plaintiff would be removed from the program if he continued to cause controversy.

On August 5, 2020, Defendant Bengel confiscated the television remote controls, turned off the televisions, and had Plaintiff's tier locked down. In addition, the RDAP unit was placed on telephone and computer restriction. Plaintiff contends that these restrictions were imposed after Defendant Hadnot was involved in a physical confrontation with another inmate, and the restrictions continued through August 6, 2020.

On August 21, 2020, the entire penitentiary in Beaumont was put on lockdown status. While the prison is on lockdown, the inmates are only allowed to shower once every 72 hours. On August 24, 2020, Defendants Primo and Mahone denied showers to Plaintiff and other inmates. The prison was placed on lockdown again on August 25, 2020, as Hurricane Laura approached the area, which impacted the inmates' ability to purchase items from the commissary. The inmates were required

to shelter in place. On August 26, 2020, the water was shut off. When it was turned back on the next day, the toilets overflowed and flooded the tier. On August 27, 2020, Plaintiff was given a frozen box lunch, which he was not able to eat until it defrosted. Plaintiff alleges he asked Defendant Slaughter if he could remove the trash from his cell and clean his cell with chemicals, but Defendant Slaughter responded, "I don't have anything to do with that." Trash was removed from the cells the next day, but Plaintiff was not given cleaning supplies or allowed to take a shower. Plaintiff alleges the prison remained on lockdown until September 1, 2020.

Plaintiff alleges Defendant Shults failed to place hand sanitizer in every housing unit or to enforce guidelines to prevent the transmission of infectious diseases. Plaintiff alleges COVID-19 began to spread as a result of Defendant Shults' inaction.

On October 7, 2020, Plaintiff claims Defendant Bengel expelled Plaintiff from the RDAP program. Plaintiff believes this was done to retaliate against him for complaining about the conditions of his confinement.

## Standard of Review

An *in forma pauperis* proceeding may be dismissed pursuant to 28 U.S.C. § 1915(e) if it: (1) is frivolous or malicious, (2) fails to state a claim on which relief may be granted or (3) seeks monetary relief from a defendant who is immune from such relief.

A complaint, containing as it does both factual allegations and legal conclusions, is frivolous if it lacks an arguable basis either in law or fact. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989); *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997). A complaint lacks an arguable basis in law if it is based on a clearly meritless legal theory. *See Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997). A complaint lacks an arguable basis in fact if, after providing the plaintiff the

opportunity to present additional facts when necessary, the facts alleged are clearly baseless. *Denton v. Hernandez*, 504 U.S. 25, 32 (1992).

A complaint does not need to contain detailed factual allegations, but the plaintiff must allege sufficient facts to show more than a speculative right to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Dismissal for failure to state a claim is appropriate if the complaint does not include enough facts to state a claim that is plausible on its face. *Id*. at 570. Conclusory allegations and a formulaic recitation of the elements of a cause of action will not suffice to prevent dismissal for failure to state a claim. *Id*. at 555. The plaintiff must plead facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

<u>Analysis</u>

A victim who has suffered a constitutional violation by a federal actor may, in some instances, recover damages in federal court. *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 395-97 (1971). Title 42 U.S.C. § 1983 allows individuals to sue for money damages when their constitutional rights are violated by state officials, but there is no analogous statute allowing individuals to recover damages for violations of their constitutional rights by federal officials. *Ziglar v. Abbasi*, 582 U.S. 120, 130 (2017). An individual's right to recover damages from federal officials for violations of constitutional rights was first recognized by the United States Supreme Court in *Bivens v. Six Unknown Fed. Narcotics Agents*. In *Bivens*, the plaintiff alleged that federal agents entered and searched his apartment without a warrant and arrested him on a narcotics charge, and that all of these actions were taken without probable cause. *Bivens*, 403 U.S. at 389. The Supreme Court held that there was an implied cause of action for damages under the Fourth Amendment for

alleged violations of the plaintiff's right to be free from unreasonable searches and seizures by federal officials. *Id*. at 397. The Supreme Court subsequently extended *Bivens* to create implied causes of action for gender discrimination under the Due Process Clause of the Fifth Amendment, *Davis v. Passman*, 422 U.S. 228 (1979), and for failing to provide an asthmatic inmate with necessary medication as required by the Cruel and Unusual Punishment Clause of the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14 (1980).

*Bivens*, *Davis*, *and Carlson* were decided during a time when the Supreme Court "would imply causes of action not explicit in the statutory text itself" in order to provide a remedy to effectuate the statute's purpose. *Ziglar*, 582 U.S. at 132. Under this judicial approach, it appeared to be possible that *Bivens* could be expanded to allow causes of action against federal officials for every constitutional cause of action against state officials permitted by § 1983. *Id*. In later cases, the Supreme Court took a more measured approach to implying causes of action for damages, and "the Court has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id*. at 132-35 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Over the past forty years, the Supreme Court has repeatedly declined to extend *Bivens* to allow new constitutional claims. *Hernandez v. Mesa*, 589 U.S. __ , 140 S. Ct. 735, 743 (2020).

In light of the Supreme Court's current approach to such cases, federal courts must now engage in a two-step inquiry when deciding whether to extend *Bivens* to new cases. *Id*. First, the court must determine whether the request to extend *Bivens* "involves a claim that arises in a 'new context' or involves a 'new category of defendants.'" *Id*. (citing *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001)); *see also Cantú v. Moody*, 933 F.3d 414, 422 (5th Cir. 2019) (noting that the court must first determine whether the plaintiff's claims "fall into one of the three existing *Bivens*

8

actions). A case presents a new context if it is different in a meaningful way from previous *Bivens* cases decided by the Supreme Court. *Ziglar*, 582 U.S. at 139. The Supreme Court provided the following, non-exhaustive list of cases that present meaningful differences:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id*. at 139-40.

Second, if the claim does arise in a new context, the court must consider whether there are "special factors" that counsel hesitation about extending *Bivens*. *Id*. at 140. Special factors may include, but are not limited to: the availability of a statutory cause of action; the length of time Congress has had to create a *Bivens*-like cause of action for that particular context, and the underlying nature of the federal official's activity. *Cantú*, 933 F.3d at 422. If there are special factors, then the court should not extend *Bivens*. *Ziglar*, 582 U.S. at 136; *see also Canada v. United States*, 950 F.3d 299, 309 (5th Cir. 2020) (noting that courts must refrain from creating an implied cause of action if any special factors exist).

Plaintiff's claims that he was punished without due process, retaliated against, and subjected to unconstitutional conditions of confinement are new contexts because the Supreme Court has not previously recognized implied causes of action for these types of claim. There are special factors counseling hesitation in extending *Bivens* to create new causes of action for these types of claims, including the availability of other remedies. *See Springer v. United States*, No. 21-11248, 2022 WL 2208516, at *1 (5th Cir. June 21, 2022).

9

First, the Bureau of Prisons's administrative remedy procedure provides an alternate method of relief. *Watkins v. Carter*, No. 20-40234, 2021 WL 4533206, at *2 (5th Cir. Oct. 4, 2021) (noting that the BOP's Administrative Remedy Program provides an alternative method of relief to a *Bivens* action). In some cases, the Federal Tort Claims Act also provides an avenue to pursue monetary claims for damages for negligent or wrongful acts committed by government employees. *Dickson v. United States*, 11 F.4th 308, 312 (5th Cir. 2021). Second, the separation of powers is another special factor weighing against extending *Bivens* because Congress has had the occasion to consider prisoner rights, but has not legislated to extend the reach of *Bivens*. *Watkins v. Three Admin. Remedy Coordinators*, 998 F.3d 682, 685-86 (5th Cir. 2021) (declining to extend *Bivens* to include a First Amendment claim of retaliation).

Because there are at least two other avenues of relief through the Administrative Remedy Program and the FTCA, and because Congress has not legislated to extend *Bivens* beyond the three causes of action recognized by the Supreme Court, Plaintiff does not have viable claims under *Bivens* against individual defendants for claims regarding the conditions of Plaintiff's confinement, retaliation, or the denial of due process at the Beaumont penitentiary.

Plaintiff's claims regarding his medical treatment are cognizable under *Bivens* because the Supreme Court previously extended *Bivens* to create an implied cause of action for failing to provide adequate medical treatment as required by the Cruel and Unusual Punishment Clause of the Eighth Amendment. Although the Eighth Amendment does not explicitly mandate a certain level of medical care for prisoners, the cruel and unusual punishment clause has been interpreted to impose a duty on prison officials to provide inmates with adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir.

1999). A prison official's deliberate indifference to the serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment, whether the indifference is manifested by prison doctors or by prison guards. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976); *Domino v. Texas Dep't Crim. Just.*, 239 F.3d 752, 754 (5th Cir. 2001).

An Eighth Amendment claim consists of two components--one objective and one subjective. *Farmer*, 511 U.S. at 839. To satisfy the objective requirement, the plaintiff must prove that he was exposed to a substantial risk of serious harm. *Id.* at 834; *Lawson v. Dallas Cnty.*, 286 F.3d 257, 262 (5th Cir. 2002). The plaintiff must also demonstrate that the defendant was deliberately indifferent to that risk. *See Farmer*, 511 U.S. at 834; *Lawson*, 286 F.3d at 262. The deliberate indifference standard is a subjective inquiry; the plaintiff must establish that the defendant was aware of an excessive risk to plaintiff's health or safety, and yet consciously disregarded the risk. *Farmer*, 511 U.S. at 840-41; *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002); *Stewart*, 174 F.3d at 534. Under exceptional circumstances, the defendant's knowledge of a substantial risk of harm may be inferred by the obviousness of the risk. *Farmer*, 511 U.S. at 842; *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999); *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994).

Mere negligence, neglect, or medical malpractice does not rise to the level of a constitutional violation. *Domino*, 239 F.3d at 756 ("It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference."); *Hall v. Thomas*, 190 F.3d 693, 697 (5th Cir. 1999) ("[A]llegations of malpractice or negligence will never state a claim under the Eighth Amendment."); *Stewart*, 174 F.3d at 534. Nor does an inmate's disagreement with his medical treatment amount to an Eighth Amendment violation. *Stewart*, 174 F.3d at 537; *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). "Rather, the plaintiff must show that the officials

'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino*, 239 F.3d at 756 (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

Plaintiff has not alleged facts demonstrating that the defendants were deliberately indifferent to his serious medical needs by denying him necessary medication as in *Carlson*. Plaintiff states that Dr. Ruiz, a medical doctor who is not identified as a defendant, refused to renew Plaintiff's permit for a bottom tier and a bottom bunk, but Plaintiff admits that Dr. Ruiz prescribed medication for pain and he ordered back and knee braces. Plaintiff's disagreement with his medical treatment does not rise to the level of a constitutional violation. Plaintiff alleges that a nurse later told him that the braces were out of stock, but he has not demonstrated that any of the named Defendants were responsible for any delay in providing Plaintiff with the braces. Plaintiff alleges that Defendants Shavers and Tenner knew that he needed an injection of a pain medication for a migraine headache on July 8, 2020. According to Plaintiff's Complaint, the defendants took action by alerting Healthcare Services that Plaintiff needed an injection, but Healthcare Services did not come to his cell to administer the injection because they were busy with other inmates. Plaintiff also alleges that he did not have proper vision and dental treatment, but he has not shown that any of the named defendants were responsible for treating his vision and dental issues. In this case, Defendants' conduct does not rise to the level of egregious intentional conduct required to satisfy the deliberate indifference standard. *See Gobert v. Caldwell*, 463 F.3d 339, 351 (5th Cir. 2006). Therefore, Plaintiff has failed to state a claim upon which relief may be granted.

Recommendation

This civil rights action should be dismissed pursuant to 28 U.S.C. § 1915(e) for failure to state a claim on which relief may be granted.

Objections

Within fourteen days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings of facts, conclusions of law and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

Failure to file written objections to the proposed findings of facts, conclusions of law and recommendations contained within this report within fourteen days after service shall bar an aggrieved party from the entitlement of *de novo* review by the district court of the proposed findings, conclusions and recommendations and from appellate review of factual findings and legal conclusions accepted by the district court except on grounds of plain error. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

SIGNED this 12th day of February, 2024.

_____
Zack Hawthorn
United States Magistrate Judge